1   SNELL & WILMER L.L.P.
    John S. Delikanakis (NV Bar #5928)
2   *jdelikanakis@swlaw.com*
    David L. Edelblute (NV Bar #14049)
3   *dedelblute@swlaw.com*
    3883 Howard Hughes Parkway, Suite 1100
4   Las Vegas, NV 89169-5958
    Telephone: (702) 784-5259
5   Facsimile: (702) 784-5252

6   LATHAM & WATKINS LLP
    Michele D. Johnson (*pro hac vice*)
7   *michele.johnson@lw.com*
    Kristin N. Murphy (*pro hac vice*)
8   *kristin.murphy @lw.com*
    650 Town Center Drive, 20th Floor
9   Costa Mesa, California 92626
    Telephone: (714) 540-1235
10  Facsimile: (714) 755-8290

11  *Attorneys for Defendant Michael V. Shustek*

12                **UNITED STATES DISTRICT COURT**

13                    **DISTRICT OF NEVADA**

14

15  SIPDA REVOCABLE TRUST, by Trenton J.        Case No.: 2:19-cv-00428-APG-BNW
    Warner, Trustee, on behalf of itself and all
16  others similarly situated,
                                                **DEFENDANT MICHAEL V. SHUSTEK'S**
17                      Plaintiff,              **MOTION TO DISMISS FIRST**
                  v.                            **AMENDED COMPLAINT**
18
                                                **Oral Argument Requested**
19  THE PARKING REIT, INC., MICHAEL V.
    SHUSTEK, ROBERT J. AALBERTS,
20  DAVID CHAVEZ, JOHN E. DAWSON,
    SHAWN NELSON, NICHOLAS NILSEN,
21  WILLIAM WELLS and ALLEN WOLFF,

22                      Defendants.

23

24

25

26

27

28

*Snell & Wilmer*
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

# NOTICE OF MOTION TO DISMISS

Defendant Michael V. Shustek moves to dismiss the third cause of action against him for breach of fiduciary duty because it fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6). This motion is supported by the attached Memorandum of Points and Authorities, the Declaration of John S. Delikanakis and the exhibits attached thereto, as well as the other papers and pleadings on file herein, and any oral argument that this court may choose to consider.

Dated:  January 9, 2020

/s/ *John S. Delikanakis*
SNELL & WILMER L.L.P.
John S. Delikanakis (NV Bar #5928)
*jdelikanakis@swlaw.com*
David L. Edelblute (NV Bar #14049)
*dedelblute@swlaw.com*
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169-5958
Telephone: (702) 784-5259
Facsimile: (702) 784-5252

LATHAM & WATKINS LLP
Michele D. Johnson (*pro hac vice*)
*michele.johnson@lw.com*
Kristin N. Murphy (*pro hac vice*)
*kristin.murphy @lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

*Attorneys for Defendant Michael V. Shustek*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................................ 3

      A.    The Parties ........................................................................................................ 3

      B.    The Merger ........................................................................................................ 4

      C.    The Third Amended and Restated Advisory Agreement ................................... 5

      D.    The Internalization ............................................................................................ 5

      E.    The Complaint ................................................................................................... 8

III.  LEGAL STANDARD .................................................................................................... 8

IV.   ARGUMENT ................................................................................................................. 9

      A.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty
            Based on the Disclosure Allegations ............................................................... 10

      B.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty
            Based on the Challenged Transactions ............................................................ 10

            1.    Plaintiff Does Not Allege that Mr. Shustek Negotiated or
                  Was Otherwise Involved in Any of the Challenged
                  Transactions on Behalf of the Company........................................... 11

            2.    Plaintiff's Allegations About Mr. Shustek's Prior,
                  Unrelated Dealings with Regulators Do Not Support a
                  Breach of Fiduciary Claim ................................................................ 13

V.    CONCLUSION ............................................................................................................ 14

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Arndt v. Prudential Bache Sec., Inc.*,
603 F. Supp. 674 (S.D. Cal. 1984) ...................................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 8

*Cisneros v. Instant Cap. Funding Grp., Inc.*,
263 F.R.D. 595 (E.D. Cal. 2009) ........................................................................ 11

*Dent v. Ramtron Int'l Corp.*,
No. 7950–VCP, 2014 WL 2931180 (Del. Ch. June 30, 2014) ........................... 10

*In re GM (Hughes) S'holder Litig.*,
No. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ..................................... 11

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
No. 758-CC, 2011 WL 227634 (Del. Ch. Jan. 14, 2011) ................................... 12

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) .............................................................................. 12

*In re Tri-Star Pictures, Inc. Litig.*,
No. 9477, 1995 WL 106520 (Del. Ch. Mar. 9, 1995) .................................... 2, 13

*Mann v. GTCR Golder Rauner, LLC*,
483 F. Supp. 2d 884 (D. Ariz. 2007) ................................................................... 9

*Oliveira v. Sugarman*,
130 A.3d 1085 (Md. Ct. Spec. App. 2016) ........................................................... 9

*Perretta v. Prometheus Development Co., Inc.*,
No. 05-cv-02987-WHA, 2005 WL 3445627 (N.D. Cal. Dec. 15, 2005) .............. 9

*Pfeffer v. Edwards*,
No. 14-0796-DOC-JCGX, 2014 WL 12567168 (C.D. Cal. Dec. 8, 2014) ......... 10

*Power Quality & Elec. Sys., Inc. v. BP West Coast Products LLC*,
No. 16-CV-04791 YGR, 2016 WL 6524408 (N.D. Cal. Nov. 3, 2016) ........... 8, 9

*Rabkin v. Philip A. Hunt Chemical Corp.*,
547 A.2d 963 (Del. Ch. 1986) ............................................................................ 11

*Shaffer v. Heitner*,
433 U.S. 186 (1977) .............................................................................................. 9

*Shenker v. Laureate Educ., Inc.*,
   983 A.2d 408 (Md. 2009) ................................................................................. 10

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................. 8

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ......................................................................... 12

*Trenwick v. Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006) ..................................................................... 11, 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................. 9

## RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 8, 14

Fed. R. Civ. P. 9(b) ................................................................................. 1, 9, 12, 14

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff's First Amended Complaint (the "Complaint") strains to connect unrelated transactions occurring years apart in an effort to second guess the sound business judgment of the board of directors (the "Board") of the Parking REIT, Inc. (the "Company"), and in particular of the Company's Chief Executive Officer, Michael Shustek.  ECF No. 32.  Plaintiff's allegations fail under well-established federal and Maryland law.  Mr. Shustek joins in the arguments in the Company Defendants'[1] forthcoming motion to dismiss, and brings this separate motion setting forth the additional reasons why Plaintiff has failed to plead a breach of fiduciary duty (Count III) as to him.

Stripped of its conclusory allegations and rhetoric, the Complaint tells the story of three separate, ordinary-course transactions:

- **The Merger.**  In December 2017, MVP REIT, Inc. ("MVP I") and MVP REIT II, Inc. ("MVP II") merged and formed the Company (the "Merger").  The Merger, which was approved by 83% of MVP I stockholders, was negotiated by special committees on both sides of the transaction.  Mr. Shustek owned only minor stakes in each entity, was not a member of either special committee, and recused himself from voting on the transaction.

- **The Third Amended Restated Advisory Agreement.**  In connection with the Board's continuous evaluation and identification of strategic options to enhance the Company's overall financial and business success, the Company formed special committees and designated certain directors—other than Mr. Shustek—to negotiate various transactions, including charter amendments and advisory agreements designed to facilitate the Company's potential future listing on a national stock exchange.  The Third Amended Restated Advisory Agreement

---

[1] Individual defendants Robert J. Aalberts, David Chavez, John E. Dawson, Shawn Nelson, Nicholas Nilsen, William Wells and Allen Wolff are collectively referred to as the "Director Defendants," and together with The Parking REIT, Inc., the "Company Defendants."

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

("TARAA"), which sought to amend the Company's advisory agreement with its external advisor, was negotiated by such a special committee in September 2018.

- **The Internalization.**  In April 2019, the Company internalized its management function to (among other things) avoid the considerable fees the Company had been paying to its external advisor, and to gain control over the day-to-day operations of the business (the "Internalization").  As Plaintiff concedes, the Board made this decision independent of Mr. Shustek, who recused himself from the consideration and approval of the Internalization on behalf of the Company.

ECF No. 32 ¶¶ 1-12.

Against this backdrop, Plaintiff theorizes that Mr. Shustek devised a long-term, covert scheme to internalize the external management function of the Company, in an effort to enrich himself at the expense of the Company's other stockholders.  Plaintiff alleges that Mr. Shustek accomplished this result, and thereby breached his fiduciary duties, by *causing* these transactions to happen.  Complaint ("Compl."), ECF No. 32 ¶ 167.  But the Complaint does not contain any facts—much less particularized ones—to support such a theory.  In particular, the Complaint is devoid of any facts suggesting that Mr. Shustek considered or negotiated on behalf of the Company any of the challenged transactions, that he voted on any of the challenged transactions, or that he sought to improperly influence the decision-making process of the directors who negotiated those transactions.  On the contrary, Plaintiff itself alleges that the Merger and the TARAA were negotiated by special committees that did not include Mr. Shustek, and that the Board "other than Shustek" negotiated the Internalization on behalf of the Company.  Compl., ECF No. 32 ¶¶ 65, 75, 120.  Nowhere does Plaintiff allege that these special committee members and other board members were not independent or were somehow beholden to Mr. Shustek.  Indeed, as set forth in the Company Defendants' forthcoming brief, the Complaint provides no factual basis from which to reasonably infer that the transactions were anything other than an exercise of the Board's sound business judgment.  Plaintiff has utterly failed to allege that Mr. Shustek, who played "no role" in the special committees' or Director Defendants' consideration

of these transactions, breached any fiduciary duties.  *In re Tri-Star Pictures, Inc. Litig.*, No. 9477, 1995 WL 106520, at *2 (Del. Ch. Mar. 9, 1995).

Finally, Plaintiff's attempt to plead around these clear deficiencies by referencing decades-old "run-ins" with regulators (Compl., ECF No. 32 ¶¶ 47-61) also fails.  The majority of these allegations involve conduct that occurred many years ago and had nothing to do with the Company.  There is no basis in fact or law to attribute breach of fiduciary duty liability to Mr. Shustek based on this alleged conduct.

For these reasons, as well as those set forth in the Company Defendants' motion to dismiss, the Complaint should be dismissed.

## II.   STATEMENT OF FACTS

### A.   The Parties

The Company is a non-traded real estate investment trust ("REIT") formed and incorporated in Maryland in 2015.  Compl., ECF No. 32 ¶ 39.  Mr. Shustek is the Chairman of the Board and Chief Executive Officer of the Company.  *Id.* ¶ 18.  Mr. Shustek was selected to serve on the Company's Board because, among other reasons, Mr. Shustek has significant real estate experience and expansive knowledge of the real estate industry, and has relationships with chief executives and other senior management at numerous real estate companies.  *See* Ex. 7 at 9.[2]  Pursuant to the Company's Charter, a majority of the Company's directors must be independent, and Mr. Shustek does not have the ability to nominate replacements for vacancies among the independent directors.  *Id.* at 16.  Like the other directors, Mr. Shustek's seat on the Company's Board is subject to the annual approval of the Company's stockholders.  *See id*. at 8.

Prior to the Merger, Mr. Shustek served as Chief Executive Officer and as a Director of MVP I.  Compl., ECF No. 32 ¶ 18.  At the time of the vote (and during the negotiations leading up to the Merger), Mr. Shustek owned approximately 1% of MVP I and MVP II's outstanding stock   Ex. 2 at 57, 66.  MVP I was externally managed by MVP Realty Advisors, LLC ("the Advisor").  *Id.* at 63.  Mr. Shustek serves as the Chief Executive Officer of the Advisor.  *Id.*

[2] All citations to "Ex." refer to the Exhibits attached to the declaration of John S. Delikanakis, filed concurrently herewith.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Following the Merger, the Advisor continued to provide services as an external manager for the Company. Compl., ECF No. 32 ¶ 82.

**B.    The Merger**

In September 2016, MVP I formed a special committee of independent directors to evaluate, among other things, a potential strategic transaction with MVP II. Ex. 2 at 85. The MVP I special committee consisted of directors Nicholas Nilsen, Shawn Nelson, Daryl Idler, Jr., and Robert Aalberts. *Id.* Mr. Shustek was not a member of the MVP I special committee. *Id.* Between December 2016 and May 2017, MVP I's special committee held twelve formal meetings, in which all committee members were present, to analyze a potential transaction with MVP II and any transactions related thereto. *Id.* MVP II also formed a special committee of independent directors consisting of David Chavez, Allen Wolff, and Erik Hart to, among other things, consider a strategic transaction between MVP I and MVP II. *Id.* Mr. Shustek was not a member of the MVP II special committee. *Id.* MVP II's special committee formally met fifteen times between October 2016 and May 2017 to discuss the potential transaction. *Id.* at 86.

On April 28, 2017, 2017, MVP II announced that the independent special committee of MVP I directors accepted from the independent special committee of MVP II directors a non-binding Letter of Intent to enter into the Merger. Ex. 1 at 3. The special committees negotiated the merger on behalf of their respective companies and recommended approval of a definitive merger agreement to their respective boards accordingly, who then (with the exception of Mr. Shustek, who recused himself) approved the Merger. *Id.*; Ex. 2 at 92. On May 26, 2017, MVP II announced its entry into a definitive merger agreement with MVP I, which provided that the merger consideration payable by MVP II to each holder of MVP I common stock would be 0.365 shares of the Company's common stock. Compl., ECF No. 32 ¶¶ 64, 67; Ex. 1.

Because the Advisor externally managed the entirety of MVP I's business affairs at the time of the Merger (Compl., ECF No. 32 ¶¶ 29, 31), the Company, the Advisor, and MVP I Operating Partnership, LP entered into a termination and fee agreement in connection with the Merger (the "Termination Agreement"). Ex. 1 at Item 1.02. Pursuant to the Termination Agreement, the Merger terminated the Advisor's relationship with MVP I and caused MVP II to

4

pay the Advisor a one-time fee of $3.6 million, contingent upon the Merger closing. *Id.* The Company also entered into a Second Amended and Restated Advisory Agreement with the Advisor (the "SARAA"), pursuant to which the Advisor would receive 1.1% of the Company's asset value per year as a management fee, up to $2 million. Compl., ECF No. 32 ¶ 74; Ex. 1.

Following approval from the boards of both companies and more than 83% of MVP I stockholders, the Company announced the completed Merger on December 15, 2017. Compl., ECF No. 32 ¶ 2; Ex. 3 at Exhibit 99.1.

### C.    The Third Amended and Restated Advisory Agreement

During the Spring of 2018, the Company formed another independent special committee of its Board to negotiate a proposed amendment to the SARAA, thereby creating the TARAA. *See* Compl., ECF No. 32 ¶ 75; Ex. 4. The Company disclosed that the purpose of the amendment was to "establish[] a path for future internalization of the Company's management[.]" Ex. 4. The TARAA provided that the Company would pay the Advisor a $21 million termination fee in the event of a change-of-control transaction or internalization. Compl., ECF No. 32 ¶ 76; Ex. 4. Importantly, the terms of the TARAA provided that the TARAA could become effective only upon the Company's listing on a national stock exchange. Compl., ECF No. 32 ¶ 75. Although the Company announced in late 2018 its intent to list its stock on the Nasdaq Global Market, the Company did not list prior to the Internalization. *Id.* ¶ 80. The TARAA thus was rendered "null and void, without ever having gone into effect" as of April 1, 2019. Ex. 7 at 22-23. The Company ultimately withdrew its application the following year, "consistent with the public interest and the protection of investors[.]" Ex. 6; Compl., ECF No. 32 ¶ 80. As a result, the TARAA never took effect.

### D.    The Internalization

In early 2018, the Company began evaluating whether to absorb its advisory function via an internalization transaction with the Advisor, Mr. Shustek, and the Advisor's parent companies Vestin Realty Mortgage I, Inc. and Vestin Realty Mortgage II, Inc. (the "Vestin Entities"), and continued to evaluate the potential transaction for more than a year. To that end, during the first half of 2018, the seven-person Board formed two separate committees of independent directors

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

to evaluate a potential internalization, each of which disbanded after determining that such a transaction was not in the Company's best interest at that time.  Compl., ECF No. 32 ¶¶ 117-120; Ex. 7 at 18.  Following the disbandment of the second committee, the Company again decided to consider internalization and ultimately empowered all of the then-current directors of the Company, other than Mr. Shustek, to review and negotiate the terms of a transaction (the "Independent Directors").  Compl., ECF No. 32 ¶ 120.  Following arms'-length negotiations between the Independent Directors, on the one side, and the Advisor and Mr. Shustek on the other, the Company agreed to:

- "acquire and assume substantially all of the [Advisor's] assets and liabilities";
- terminate the Second and Third Amended Restated Advisory Agreements between the Company and the Advisor;
- extend employment to the Advisor's executives and employees;
- arrange for the Advisor to continue to provide certain services; and,
- lease any of the Advisor's employees until they become fully employed by the Company.

Ex. 5 at Item 1.01.

Following a March 29, 2019 presentation and receipt of a formal fairness opinion from the Company's financial advisor expressing "the fairness to the Company, from a financial point of view [ . . . ] of the Consideration to be paid by the Company pursuant to the Contribution Agreement," the Independent Directors unanimously approved the terms of the Internalization. *Id*.  Because of his affiliation with the Advisor, Mr. Shustek did not participate in the Board meetings discussing the Internalization or the vote to approve the Internalization.  *Id*.  The Company announced the Internalization in a press release dated April 3, 2019.  *Id*.

As described in detail in the Company's securities disclosures, in reaching the unanimous decision to approve the Internalization, the Independent Directors considered a number of positive factors to determine whether the proposed terms were fair to the Company, including the following:  "the belief that the Internalization may facilitate the Company's ability to raise capital to support its future growth; the belief that Internalization may facilitate a potential listing

of the Company's stock on a national securities exchange; . . . the belief that the Internalization through an all stock deal will better align the interests of management with the interests of the Company and its stockholders; [and] the belief that the Internalization would result in a reduction in the Company's overall operating expenses, primarily as a result of terminating management fees paid to the [Advisor], which fees would have increased as the Company continues to grow in asset size[.]" *Id.* The Independent Directors also considered potential negative factors that may have weighed against approving the Internalization, and, based on a thorough review of these and other factors, approved the transaction. *Id.*

The Company was obligated to pay the Advisor (or any alternative external manager) an asset management fee based on the total value of assets managed. *Id.* The Company considered the present value of this future obligation against the cost of Internalization—as well as the different incentives that an internal manager with an equity ownership would have versus an external manager who is paid based on assets managed regardless of performance—and decided to internalize. *Id.*

The Company executed the Internalization via a Contribution Agreement with the Advisor, Vestin Entities, and Mr. Shustek. The Contribution Agreement provided that the Advisor would receive 1,600,000 shares of the Company's stock. *Id.*; *see also* Compl., ECF No. 32 ¶ 11. The Advisor received 400,000 of these shares on April 1, 2019, and the remaining 1,200,000 were to be issued in 400,000 share installments on December 31, 2019, 2020, and 2021. Compl., ECF No. 32 ¶¶ 11, 84. The Contribution Agreement also permits the Company to repurchase up to 1,100,000 shares of common stock from the Vestin Entities and Advisor for $17.50 per share at any time prior to December 31, 2022. *Id.* ¶¶ 11, 85. The Company simultaneously entered into a number of ancillary agreements related to the Internalization: (1) a Services Agreement with the Advisor, Vestin Entities, and Shustek; (2) an Employee Leasing Agreement with the Advisor; (3) a Registration Rights Agreement with the Advisor and Vestin Entities; (4) a Termination Agreement with the Advisor; and (5) Employment Agreements with Mr. Shustek, Daniel Huberty, and James Bland. Ex. 5; *see also* Compl., ECF No. 32 ¶ 82. As the Company disclosed to its stockholders, these agreements were unanimously approved by the

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Independent Directors after, among other things, taking into consideration a third-party valuation for the transaction and consulting with legal counsel.  *See* Ex. 5.

### E.    The Complaint

On March 12, 2019, Plaintiff filed a class action complaint on behalf of stockholders of the Company and MVP I alleging that Defendants fraudulently concealed the Company's reasons for consummating the Merger, and that the Director Defendants breached their fiduciary duties by causing the Company to disseminate purportedly false and misleading proxy statements in connection with the Merger at the expense of the putative class of stockholders.  *See* ECF. No. 1 ¶¶ 99, 119.  On October 11, 2019, Plaintiff amended the complaint to add allegations that the Director Defendants further breached their fiduciary duties by causing or permitting the Merger and Internalization and disseminating allegedly false and misleading proxy statements in connection with those transactions.  Compl., ECF No. 32 ¶¶ 148, 165, 169.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) demands dismissal of an action where a complaint fails to adequately state a claim upon which relief can be granted.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*  The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Because Plaintiff's claims sound in fraud, they are also subject to the heightened pleading requirements of Rule 9(b).  *Power Quality & Elec. Sys., Inc. v. BP West Coast Products LLC*, No. 16-CV-04791 YGR, 2016 WL 6524408, at *6 (N.D. Cal. Nov. 3, 2016).  The core premise of Plaintiff's third cause of action against Mr. Shustek is that he purportedly "caused or

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

permitted" the Merger and certain charter amendments, while withholding from stockholders that the "true" reasons for such transactions were to "pave the way" for later transactions that were designed to benefit Mr. Shustek.  Compl., ECF No. 32 ¶¶ 167-169; *see also id.* ¶ 8 (alleging that Mr. Shustek concocted a "secret plan" to internalize the Company's management function to enrich himself).  Because allegations such as these sound in fraud, they are subject to the exacting and heightened pleading requirements of Rule 9(b).  *See Power Quality*, 2016 WL 6524408, at \*6 (allegations that defendant "intentionally kept plaintiffs ignorant of its true intentions" sounded in fraud and were subject to Rule 9(b)); *Perretta v. Prometheus Development Co., Inc.,* No. 05-cv-02987-WHA, 2005 WL 3445627, at \*5 (N.D. Cal. Dec. 15, 2005) (applying Rule 9(b) to breach of fiduciary duty claim because "all of plaintiffs' claims sound in fraud").  To prevail on this motion, Plaintiff must "state with particularity the circumstances constituting fraud."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").  Plaintiff's allegations do not come close to meeting this standard.

## IV.   ARGUMENT

Plaintiff alleges that Mr. Shustek breached his fiduciary duties in connection with the Merger, the TARAA, and the Internalization because he purportedly "caused or permitted" these transactions in an effort to enrich himself at the expense of the other stockholders.  Compl., ECF No. 32 ¶¶ 167-169.  But Plaintiff does not allege that Mr. Shustek participated in the consideration of these transactions on behalf of the Company or that he otherwise improperly influenced the decision-making process of the special committees and directors who were charged with negotiating them.  Under settled law, Plaintiff's breach of fiduciary duty claim against Mr. Shustek should be dismissed.[3]

---

[3] The viability of Plaintiff's fiduciary duty claims is assessed under the law of the Company's state of incorporation, Maryland.  *See Shaffer v. Heitner*, 433 U.S. 186, 215 n.44 (1977) ("In general, the law of the State of incorporation is held to govern the liabilities of officers or directors to the corporation and its stockholders."); *Mann v. GTCR Golder Rauner, LLC*, 483 F.

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

### A.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty Based on the Disclosure Allegations

At the outset, Mr. Shustek joins in the Company Defendants' forthcoming motion to dismiss because the Complaint does not state a claim against any of the defendants for violations of Sections 20(a) and 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.  For the same reason, any breach of fiduciary duty claim against Mr. Shustek that is premised on the disclosure allegations likewise fails.  Plaintiff alleges that the Director Defendants and Mr. Shustek breached their fiduciary duties because they purportedly "caused" the filing of the August 2017 and August 2018 proxies, which Plaintiff alleges contained misstatements and omissions of material fact.  Compl., ECF No. 32 ¶ 169.  Because Plaintiff has failed to allege that the August 2017 and August 2018 proxies contained any material misstatements or omissions of fact, as set forth in the Company Defendants' motion to dismiss, Plaintiff's breach of fiduciary duty claims premised on the same alleged disclosure violations fail.  *See Dent v. Ramtron Int'l Corp.*, No. 7950-VCP, 2014 WL 2931180, at *17 (Del. Ch. June 30, 2014) (dismissing breach of fiduciary duty claim premised on the disclosures in a proxy, where complaint did not plead actionable disclosure violations).

### B.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty Based on the Challenged Transactions

The Complaint likewise fails to state a claim arising out of the consideration and approval of the three challenged transactions.  Mr. Shustek joins in the Company Defendants' argument that these were ordinary course, arms'-length transactions that should be reviewed under the deferential business judgment rule.  Simply put, Plaintiff has failed to allege that approval of these transactions was anything other than a rational business decision made to advance the corporation's interests.  *See Pfeffer v. Edwards*, No. 14-0796-DOC-JCGX, 2014 WL 12567168, at *7 (C.D. Cal. Dec. 8, 2014) ("To survive a motion to dismiss, plaintiff must plead facts that

---

Supp. 2d 884, 892 (D. Ariz. 2007).  Maryland courts, in turn, "often look to Delaware law for guidance on issues of corporate law."  *Oliveira v. Sugarman*, 130 A.3d 1085, 1093 & n.10 (Md. Ct. Spec. App. 2016); *see also Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 420 n.14 (Md. 2009) ("This Court has noted the 'respect properly accorded Delaware decisions on corporate law' ordinarily in our jurisprudence.").

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

rebut [the] presumption" that directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.") (applying Delaware law). The law does not support Plaintiff's theory that its disagreement with the strategic direction of the Company constitutes a breach of fiduciary duty. *See Trenwick v. Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 193 (Del. Ch. 2006) ("The business judgment rule exists precisely to ensure that directors and managers acting in good faith may pursue risky strategies that seem to promise great profit."); *Rabkin v. Philip A. Hunt Chemical Corp.,* 547 A.2d 963, 972 (Del. Ch. 1986) (noting that without factual allegations supporting that a decision was uninformed or grossly negligent, mere dissatisfaction about how directors exercised their business judgment does not state a claim).

In any event, the allegations fail to state a claim with respect to Mr. Shustek because Plaintiff does not plead with any specificity how he supposedly breached his fiduciary duties to the Company's stockholders. The Complaint is devoid of any allegations suggesting that Mr. Shustek negotiated any of the relevant transactions on behalf of the Company or sought to improperly influence the special committees' or Director Defendants' independent decision-making process. These bare allegations include no particulars regarding "the time, place, and nature of the alleged fraudulent activities," and are insufficient as a matter of law. *Cisneros v. Instant Cap. Funding Grp., Inc.*, 263 F.R.D. 595, 606 (E.D. Cal. 2009) (citation omitted).

### 1. Plaintiff Does Not Allege that Mr. Shustek Negotiated or Was Otherwise Involved in Any of the Challenged Transactions on Behalf of the Company.

**The Merger and the TARAA.** First, with respect to the Merger and the TARAA, Plaintiff alleges "Shustek caused Parking REIT . . . to pay Advisor $6.8 million in fees in 2017" and then "induced" the Company's entry into the TARAA, long after the Merger. Compl., ECF No. 32 ¶¶ 73, 75. Vague, generalized allegations such as these are insufficient even under the normal pleading standard, and are certainly insufficient to satisfy the exacting requirements of Rule 9(b). *See In re GM (Hughes) S'holder Litig.*, No. 20269, 2005 WL 1089021, at *29 (Del. Ch. May 4, 2005) ("conclusory allegations . . . are entitled to no weight"); *Arndt v. Prudential*

*Bache Sec., Inc.*, 603 F. Supp. 674, 676 (S.D. Cal. 1984) (dismissing complaint for failing to allege breach of fiduciary duty with particularity where defendants allegedly concealed losses). Plaintiff does not explain how Mr. Shustek could have "caused" or "induced" the Company to do anything, or allege any facts supporting these conclusory allegations.

More significantly, Plaintiff's allegation that Mr. Shustek caused the Company to enter into these (entirely separate) transactions is contradicted elsewhere in the Complaint, as Plaintiff alleges that both the Merger and TARAA were negotiated by special committees. *See* Compl., ECF No. 32 ¶ 65 (quoting Ex. 1) ("[A]fter reviewing strategic alternatives, a special committee of the board of directors of MVP I . . . has accepted a non-binding Letter of Intent ('LOI') from MVP II regarding a proposed merger of MVP I with MVP II."); *id.* ¶ 75 (explaining that the TARAA "was negotiated by a special committee of the Board"). These special committees were composed entirely of independent directors, and Plaintiff does not allege (because it cannot) that they included Mr. Shustek. *See, e.g.*, Ex. 1 at Exhibit 99.1; Ex. 2 at 85; *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996)). Plaintiff does not allege a single fact suggesting that Mr. Shustek ever attempted to improperly exert influence over the committees' negotiations, or otherwise took any action that could have constituted a breach of his duties. Mr. Shustek also specifically recused himself from approving the Merger. Ex. 2 at 92. Any breach of fiduciary duty claim premised on the Merger or TARAA fails. *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2011 WL 227634, at \*7 (Del. Ch. Jan. 14, 2011) (dismissing breach of fiduciary duty claim against director who "did not participate in the Special Committee process" or "approval" of a merger).

**The Internalization.** Nor does the Complaint plead with any particularity that Mr. Shustek breached his fiduciary duties in connection with the Internalization. Plaintiff alleges that the Company and the Advisor entered into agreements to internalize the Company's management function effective April 1, 2019, but does not allege that Mr. Shustek was involved in the Company's decision to do so. Compl., ECF No. 32 ¶ 82. Plaintiff's only allegation in this

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

regard is the bare assertion that Mr. Shustek "caused" the Company to assume the Advisor's debt (*id.* ¶ 90)—unaccompanied by any facts explaining how Mr. Shustek could have caused the Company to do so.  The Complaint acknowledges that the Internalization was negotiated by the Company's entire Board "other than Shustek."  *Id*. ¶ 120.  Mr. Shustek did not participate in the Board's consideration of the Internalization, nor did he vote on its approval on behalf of the Company.  *See* Ex. 5 (providing that the Internalization Directors "negotiated and unanimously approved" the Internalization, and that Mr. Shustek "did not participate in the Board of Directors meetings during which the Internalization was considered and abstained from voting on the Internalization.").  Mr. Shustek's abstention entitles him to a safe harbor from liability as a matter of law.  *See In re Tri-Star*, 1995 WL 106520, at *2 ("Delaware law clearly prescribes that a director who plays no role in the process of deciding whether to approve a challenged transaction cannot be held liable on a claim that the board's decision to approve that transaction was wrongful.").

> ### 2.    Plaintiff's Allegations About Mr. Shustek's Prior, Unrelated Dealings with Regulators Do Not Support a Breach of Fiduciary Claim.

Plaintiff's attempt to plead around the Complaint's obvious deficiencies by including unrelated, decades-old allegations regarding Mr. Shustek's purported prior "run-ins with regulators" fails.  Compl., ECF No. 32 ¶¶ 47-61.  Even assuming that any of the alleged prior incidents were related to the Merger, TARAA, or Internalization (they are not), Plaintiff does not explain how any of this conduct constituted a breach of fiduciary duty with respect to this Company's stockholders and these transactions in particular.  *See, e.g.*, *id*. ¶ 48 (citing incident with the SEC from over twenty years ago, which Plaintiff does not allege involved Mr. Shustek); *id.* ¶ 49 (citing an SEC investigation from 2006 in which Shustek and other respondents consented to entry of a cease and desist order "[w]ithout admitting the SEC charges").  And with respect to the more recent allegations regarding FINRA's investigation in 2018, Plaintiff acknowledges that FINRA ultimately chose not to commence action against Mr. Shustek.  *Id.* ¶¶ 51-52 (FINRA "determined that it would not recommend action against Shustek based on the underwriting compensation matter"); *see also id.* ¶ 53 ("FINRA later chose not to commence

action against Shustek").  Finally, Plaintiff does not explain how the Audit Committee's determination that Mr. Shustek did not exercise appropriate "oversight in connection with the initial submission of underwriting compensation information to FINRA" constituted a breach of fiduciary duty with respect to the transactions challenged in the Complaint.  *Id*. ¶ 54.

At most, the Complaint alleges that Mr. Shustek has been involved in the Company since its inception, that he owns several entities that are related to and have done business with the Company, and that the Company's several special committees and directors (other than Mr. Shustek) negotiated and approved strategic transactions to enhance the Company's long-term financial and business outlook.  These allegations do "not come close to pleading particularized facts" supporting Plaintiff's theory that Mr. Shustek devised and executed a long-term scheme to internalize the Company through the Merger and TARAA.  *Trenwick*, 906 A.2d at 208 (dismissing claims based on allegations that defendants fraudulently concealed, among other things, the "true nature" and "true value" of certain accounts and subsidiaries, where such allegations were "precisely the sort of unspecific, broad-brush generalities that Rule 9(b) is intended to preclude from serving as a basis for a fraud claim").

## V.   CONCLUSION

For the foregoing reasons, and for the reasons identified in the Company Defendants' motion to dismiss, the Court should dismiss under Rules 9(b) and 12(b)(6) all claims asserted against Mr. Shustek in the Complaint.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1

2   Dated:  January 9, 2020

  /s/ *John S. Delikanakis*
SNELL & WILMER L.L.P.
3   John S. Delikanakis (NV Bar #5928)
*jdelikanakis@swlaw.com*
David L. Edelblute (NV Bar #14049)
4   *dedelblute@swlaw.com*
3883 Howard Hughes Parkway, Suite 1100
5   Las Vegas, NV 89169-5958
Telephone: (702) 784-5259
6   Facsimile: (702) 784-5252

7   LATHAM & WATKINS LLP
Michele D. Johnson (*pro hac vice*)
8   *michele.johnson@lw.com*
Kristin N. Murphy (*pro hac vice*)
9   *kristin.murphy@lw.com*
650 Town Center Drive, 20th Floor
10   Costa Mesa, California 92626
Telephone: (714) 540-1235
11   Facsimile: (714) 755-8290

12

13   *Attorneys for Defendant Michael V. Shustek*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

15

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2020, I electronically filed the foregoing document using the

CM/ECF system which will send notification of such filing to the e-mail addresses registered in

the CM/ECF system, as denoted on the Electronic Mail Notice List.

Christopher J. Gray, Esq.
**LAW OFFICE OF CHRISTOPHER J. GRAY, P.C.**
360 Lexington Ave., 14th Floor
New York, NY 10017
gray@cjgraylaw.com

Donald J. Enright, Esq.
**LAW OFFICES OF JOSHUA B. KONS, LLC**
100 Pearl Street, 14th Floor
Hartford, CT 06103
joshuakons@konslaw.com

Martin L. Welsh, Esq.
**LAW OFFICE OF HAYES & WELSH**
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, NV 89074
mwelsh@lvlaw.com
*Attorneys for Plaintiff SIPDA Revocable Trust*
*by Trenton J. Warner, Director, on behalf of*
*itself and all other similarly situated*

*/s/ D'Andrea Dunn*
An employee of SNELL & WILMER L.L.P

**DECLARATION OF JOHN S. DELIKANAKIS**

I, John S. Delikanakis, declare as follows:

1.      I am an attorney with the law firm of Snell & Wilmer LLP, and counsel of record for Defendant Michael V. Shustek ("Mr. Shustek" or "Defendant").  I am a member in good standing with the State Bar of Nevada.  I submit this declaration in support of the accompanying Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). ECF No. 36. I have personal knowledge of the facts set forth herein.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of excerpts of MVP REIT, Inc.'s ("MVP I") Form 8-K dated May 26, 2017, filed with the SEC on May 31, 2017, publicly available at www.sec.gov.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of excerpts of MVP I's Definitive Proxy Statement on Schedule 14A dated August 11, 2017, filed with the SEC on August 16, 2017, publicly available at www.sec.gov.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of The Parking REIT, Inc.'s ("Company") Form 8-K dated December 15, 2017, filed with the SEC on December 18, 2017, publicly available at www.sec.gov.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of the Company's Form 8-K dated September 14, 2018, filed with the SEC on September 20, 2018, publicly available at www.sec.gov.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of excerpts of the Company's Form 8-K dated March 29, 2019, filed with the SEC on April 3, 2019, publicly available at www.sec.gov.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of excerpts of the Company's Form RW dated and filed with the SEC on August 29, 2019, publicly available at www.sec.gov.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of excerpts of the Company's Definitive Proxy Statement on Schedule 14A dated April 19, 2019, filed with the SEC on April 26, 2019, publicly available at www.sec.gov.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2020 at Las Vegas, Nevada.

_/s/ John S. Delikanakis_
John S. Delikanakis

4836-8582-9809